Next case is William Bragg v. Secretary of Veterans Affairs, 2021-2287. Mr. Carpenter. Thank you very much, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. William Bragg. The matter at issue in this appeal is a question of law regarding the legal test to be used to determine whether or not a claim has been reasonably raised in an original, formal claim for service-connected compensation. We believe that the Veterans Court incorrectly relied upon the legal test for an informal claim based upon the previously or then existing provisions of 38 CFR 3.155. The difference being that the conditions for the raising of a reasonable claim in an original claim are set out by this Court's decision in Sellers and deal with the requirement that the formal claim identify, at least to some high level of generality, the injury for which compensation is being sought. Does Sellers specifically say the standard is identical for formal and informal claims? It does so, Your Honor. So what difference does it make here? Well, I think the difference that it makes here is that by using the standards articulated by the regulation, they limited the consideration of whether or not the test under Sellers was in fact met. And the test under Sellers is clearly met here because the evidence was that there was a serious injury in service that rendered Mr. Bragg unconscious for 32 hours. I understood the issue you're presenting to be whether or not the Veterans Court applied the right legal standard. Correct. The Veterans Court applied Sellers, correct? And in doing so, they applied it incorrectly. Okay, but they did apply Sellers. Yes, they did make reference to Sellers. And Sellers is the right legal test. And Sellers is the correct legal standard. And the question then becomes whether or not in applying Sellers that they applied the Sellers test or whether they in fact diverged from that test and relied upon the test for an informal claim which has a different legal criteria. I understand that Sellers made the comment that they accomplished the same thing, but they do so in very different ways. They examine the original application based upon, if you will, the totality of circumstances that are presented by the evidence of record as opposed to expressing a clear intent to file a specific claim going forward. An informal claim is something that is done in order to initiate something that has not previously been presented to the agency. This was an original claim in which all of the resulting service-connected injuries were not considered. And they were clearly overlooked. Where did they not consider the medical report? Because they did not adjudicate the issue of a head injury. But that's a question of whether the medical report showed a head injury. I thought they concluded that it didn't. And they did so incorrectly based upon the evidence of record. In our view, Your Honor, you can't be... That's a fact question, isn't it? Well, I don't believe so, Your Honor, because the legal test is whether or not it is or isn't reasonably raised. And the evidence of record that was before the agency in 1967 was that Mr. Bragg had been unconscious for 32 hours. Now, to me, it's impossible not to make the logical connection between being unconscious and a head injury. Well, fair enough, but that's a fact question, it would seem, rather than a legal question. And that is a legitimate question for inquiry in this consideration, Your Honor, as to whether or not the legal test that was created originally by this court in Roberson about looking at a pro se appellant's claim in the light most favorable to the claimant to express any reasonable claim raised by the injury. But this is a Pew claim, isn't it? It is, Your Honor, but... Which is fact. Well, no, Your Honor, it can also be a question of law. And we believe that the question of law by this pro se appellant... What we have here, Your Honor, is a person who has suffered from a traumatic brain injury for which the VA has granted service connection for and moved back the original effective date to the date of a second application where he used the term a brain injury. And they granted the original claim based upon TBI and then granted an earlier claim because these same service records that were before the VA in 1967 were not considered for purposes of reconsideration under 3.156C. We are now asking, excuse me, Mr. Bragg, a totally disabled veteran from a brain injury as asked as a pro se claimant to review the 2013 board decision for Pew. The legal standard... I think the veteran's report did say that. It says the board is... This is on A5. The board assessed the medical report and noted that it implied the appellant had injured his head. Right? Yes. So they read it as noting a head injury but no symptoms resulting from a head injury as opposed to ocular problems. And, Your Honor, that goes to the question of what 1110 is intended to compensate for. And it is intended to compensate for an injury that happens in service and results in a disability. We submit that being unconscious for 32 hours, having been in three different military hospitals over a year and a half, constitutes evidence of a disability for a head injury. Well, maybe so, but didn't the board conclude that there was no evidence of a disability resulting from the head injury? And they did so incorrectly by not applying the correct legal standard for consideration of a pro se appellant's claim, in this case a claim or request for revision based upon a clear and unmistakable error. We're talking about a profoundly disabled veteran who makes a claim in 1967 and the VA does not look at the records in a sympathetic way to raise every possible claim. And this was clearly a possible claim that was proved to be in existence later in the 2000s when the original grant was made for service connection for TBI. Part of this goes to the whole nature of the head injury, which we now understand at a much more sophisticated level, and describe it as a traumatic brain injury. But that was not the situation when he made his second claim, and they denied that second claim. Clearly, that claim should not have been denied, and when it was reconsidered, they granted it. That exact same process should have taken place under this court's standard for the sympathetic reading of a pro se claimant's claim for even clear and unmistakable error. I want to ask you about your 3.156C argument. First off, did you make that argument in the opening brief? Oh, no, Your Honor, I'm sorry. I was only making parenthetical reference to what happened in between these times. So is that not a separate trial? That's not an issue in this case. The 3.156C was an intervening determination, which the VA granted an earlier effective date from, I believe it was 2004, back to 1991. So we don't need to consider that? Oh, no, no, no. I'm sorry. I didn't mean to mislead with that, but simply to put the entirety of this process in context. This is not a situation in which a skilled lawyer was bringing a request for revision in this 2013 board decision. This was a totally disabled veteran that the VA recognizes was disabled from this head injury. I'm close to the end of my time. I'll reserve the balance unless there's further questions from the panel. We will save it for you, Mr. Carpenter. Mr. Vallecourt. Good morning. Brett Vallecourt on behalf of the United States, and may it please the Court. In this appeal, Mr. Bragg at bottom is asking this Court to reinterpret the contents of his 1967 claim to find benefits that his claim was seeking benefits for brain injury. However, the law and the facts stand as insurmountable hurdles in Mr. Bragg's way. As this Court made clear in Ellington v. Peake, the interpretation of the contents of a claim are beyond this Court's jurisdiction because they are factual issues. And second, even if this Court did have jurisdiction to determine the scope of his claim for benefits, that claim, including any medical documentation referenced therein or existing at the time, simply did not identify a brain injury and did not reflect an intent to seek benefits related to a brain injury. So if we read the 1967 thing as claiming a head injury, as apparently the Board did, why isn't that a sufficient allegation of a disability? The Board seemed to say you have to go further than that and say what the consequences of the head injury are? Yes, Your Honor, I believe it does. So it is clear that he suffered injuries to various parts of his face and his head, but there's no indication that these injuries extended to his brain. And there's no evidence in the record that Mr. Bragg was suffering from a brain injury in 1967. And there is that one medical document. Brain injury, that would have been sufficient, but head injury isn't? Yes, Your Honor. So there is that one medical document that references. That's a pretty fine line. Well, Your Honor, so the veteran has an obligation to present, you know, at least their intent to claim benefits for certain injuries. And one can suffer lacerations, for example, of the face, and that's on the head, but it would not necessarily extend to damage of the brain. And so, you know, as my colleague. What's the difference between saying I suffered a head injury and I suffered a brain injury? Is there a difference between the two? I believe that there is, Your Honor. He said I suffered a brain injury. You say that would be okay, right? Yes. In fact, that's what the veteran did in 1991 when he said I'm filing a claim for benefits for organic brain syndrome, which the board in 2013, you know, made the reasonable and logical inference that this is effectively the same thing as TBI, a traumatic brain injury. What about the secretary's obligation to do a sympathetic reading of the entire record on behalf of the veteran? The secretary certainly has that obligation, and that was what the board did here in 2013. The question before this court. What about earlier? What about in 1967? You had that obligation as well back then, didn't you? That's correct. So drawing this fine line between a head injury and a brain injury, is that complying with the duty to have a pro-veteran sympathetic reading of the record? So it is because in Murphy v. Wilkie, this court made clear that the veteran in kind of Murphy, Shea, and Sellers, the constellation of cases that govern this, the secretary should be looking at medical records that are referenced in the claim to try to discern the intent of the veteran and to see what the veteran is trying to identify as the disabling condition for which he or she seeks benefits. However, that does not extend to a fishing expedition where the secretary has to then look at the entirety of the medical records and try to discern what the veteran is actually seeking. And so there is that distinction there. You mentioned Q. And how does this distinction between head and brain injury fit into the Q context? So the Q context requires a clear and unmistakable error, which is to say a specific error that is undebatable and would have manifestly changed the outcome of this case. And so that means that to the extent there is a factual question, which, again, under Ellington v. Peek, this court does not have jurisdiction to consider the scope of the claim, that the board, when it was considering that question in 2019, was only considering it for clear and unmistakable error. So the board in 2019, to the extent it considered that factual question, would have had to determine that the 2013 board was so wrong that it was beyond debate and that it was so wrong that that error would have manifestly changed the outcome of the appeal. So the board decision that found that the 1967 claim described a head injury is the 2019 board decision, right? I'm sorry, can you repeat that? The board decision that said that the 1967 claim described a head injury is the 2019 board decision? Your Honor, that would be the 2013 board decision. So could you show me the page where they discussed that? Yes. So we're looking around Appendix 220. The 2013 opinion starts at 222. And it starts on 224 where they go through the findings of fact. And this is when the veteran presented in 2008, essentially the 3.156 argument for an earlier effective date based on medical records that were not considered. And so the board in 2013 did exactly what it was supposed to do. What I'm asking is to show me the veterans court said that the board found that the 1967 claim described a head injury. I'm just asking where the board said that. Well, so what the board said is that, and this is on 229. 229. It says, quote, a review of the veterans claim files contains no written communication either formal or informal before November 7, 1991, reflecting an intent to file a service connection claim for TBI, parentheses, or organic brain syndrome. Okay, but you're not pointing me to what I'm asking about. Where do they recognize that it described a head injury? Well, so also on 229, when the court is examining the record, this is the second paragraph. It does mention that he was injured in the motor vehicle accident. It mentions his period of unconsciousness. But then it says, quote, there is no specific assessment for a head injury. You're still not helping me. On A5, this is the veterans court decision. It says the board assessed the medical board report in order to imply that the appellant had injured his head. Okay, where does the board say that? So that would be the sentence after the one I was referring to, which is on 229. The veteran incurred multiple injuries, including left right mandibular fractures, a fracture of the left side goma, and a fracture of the right humerus. And so it does mention that there's no specific assessment for a head injury other than the x-rays that have been taken. Well, where is that saying he suffered a head injury? On the second paragraph on 229. The veteran was formally diagnosed. That's 1991. The paragraph starts with the evidence of the record reflects. You're referring to the mandibular fractures and the left side goma fracture and right humerus. Are those all components of the head? Yes, yes. So I believe, I'm not a doctor, but I believe that the mandibular fracture is about the jaw, and zygoma, I believe, is part of the ocular socket. So, you know, there is the injuries to the face and the head, to be clear, and there's one medical document, as my colleague has pointed out and relied on, that he was unconscious following his truck accident. But the same medical records, if we look at Appendix 23 through 26, they contain no discussion of any resulting brain condition. And, in fact, the same medical document concludes, quote, at the present time the patient is stable and doing well in all parameters except that his diplopia, binocular, persists in all fields of gaze. And that's at page 26. So that's what was before the VA as of 1967. And as this court has made clear in Sellers, and then even more clear, I believe, in Samson, a case that we cite in our briefs, both an intent to apply for benefits and an indication of the benefits sought or required for a formal or informal claim. There's not a distinction there when it comes to those requirements. So currently Mr. Bragg has a 1991 effective date for his brain injury, and that makes sense because the record shows that 1991 is the year that first reflects he was diagnosed with a brain injury, and that's at Appendix 42 through 46. And 1991 is also the year that Mr. Bragg first filed identifying a traumatic brain injury, which was then called an organic brain syndrome, and that's at Appendix 47. And so here the Board of Veterans' Appeals assigned him a 1991 effective date after it did exactly what it was supposed to do. It scoured Mr. Bragg's records, found medical records that determined should have been considered by the rating official in 1992, and based on those records the board decided that Mr. Bragg's claim for brain injury had to be reconsidered under 38 CFR 3.156C. So then the board, based on that, assigned him a 1991 effective date. Mr. Bragg did not appeal that decision and instead filed a notice of disagreement four years later, which the board liberally construed as a cue motion. In that motion he sought a 1967 effective date. So then the board determined that there was no clear and unmistakable error, and then in 2021 the Veterans Court affirmed, and of course that's how we're all here today. I understand, Mr. Carpenter. He's arguing principally that the Veterans Court did not truly apply the seller's standard for determining when the claimant intended to file benefit for brain injury. Do you understand that to be the issue? And if so, what's your response? I understand that that's what my colleague stated, but I don't understand it, frankly. I think that sellers, as clarified by Sampson, made very clear that you do need that intent to file for those benefits. And how do we know, in your view, that the Veterans Court applied that standard? Because the Veterans Court walked through its analysis of the 2019 board decision and pointed out exactly what the 2019 board decision did, which is the four things I just mentioned, by scouring the records, finding records that should have been considered at the time, reconsidering what the 2013 board did, and reconsidering those records and assigning the 1991 effective date. And then the 2019 board, of course, looked only for cue error and didn't find any, even though it did note that there could potentially be a disagreement about whether a head injury, as Your Honor stated, a head injury could be a brain injury. But that's a factual determination. So it's not before this court, and it actually wasn't even before the 2019 board because it would not be undebatable. That would be, at most, subject to debate. So, you know, the procedural posture here, in addition to the jurisdiction, are hurdles in addition to the actual facts of what was before the board in 1967. So I do want to just quickly touch upon Mr. Bragg's argument that the claim must be read to include the brain injury. In the opening brief, it was because of the VA's duty to, quote, develop all potential claims raised by the evidence. That's a brief at 16. But in Sellers, this court roundly rejected the notion that a formal claim for one condition would impose a duty on the VA to, quote, search the veteran's record to identify and fully develop any additional claim the record may support. And that was Sellers at 1337. And then the Sellers court further clarified that, quote, relevant statutes, regulations, and judicial precedent require that a veteran's legally sufficient claim provide information, even at a high level of generality, to identify the sickness, disease, or injury to which benefits are sought. So suppose he had said in 1967, I want compensation for a head injury. That would not have been sufficient? I still think that that is, I mean, it's debatable. Perhaps in the first instance if this were maybe if we were in the board on a direct appeal of a rating decision, that might be debatable. But in this procedural posture, you know, a debatable error is not enough, especially a factual question like that when you're interpreting the scope of a claim, which would be beyond jurisdiction under Ellington v. Peek in any case. And I did want to also quickly, actually I only have 11 seconds, so if there are no further questions. Well, if you want to make one quick point, you may. Okay. Thank you, Your Honor. The 3.156C argument was not raised in Mr. Bragg's opening in the cue motion to the board. So to the extent Mr. Bragg's argument is that the Veterans Court needed to have considered 3.156C, which again was not in his opening brief in this case, that it would actually be legal error for the Veterans Court to have considered it under Andre v. Principi because it was not something in his cue motion. And, of course, the Veterans Court did not address that. Thank you, Counsel. Mr. Coppinger has some time left. Our first point that we made in our opening brief was the obligation self-imposed by the Secretary that it's the obligation of the VA to develop evidence to substantiate every claim, every benefit that is available under law. That didn't happen in 1967. They narrowed the scope of the claim by only considering those things that were clearly articulated. Now, in the totality of this case, as discussed by both counsel, the government has recognized that there was an error made by the VA in the 1967 case to not get all of the service records. So they didn't have all of the service records at the time in which they adjudicated the original claim, which is why he... He had an obligation to get the service records if it was a claim, right? That's correct, John. And the claim was for the resulting injuries from the explosion that he was injured in while in service. And part of that evidence included his being unconscious for 32 hours. The question then becomes, is it the intent of Congress that the VA assist in the first instance by looking at the totality of the evidence that's available? It seems to me you're looking at the 1967 decision through the lens of the law as it's developed since then, which, as I understand, Q, is not what you're supposed to do. That is not my intent, Your Honor. My intent is to demonstrate that this information, had it been properly developed in 1967, at the time of the original rating decision, then these military records and the attendant medical records showing the head injury in service, rendering him unconscious, would have reasonably raised and that's how this should have been examined rather than through the narrower lens of, was there an expression of intent? By narrowing it using the expression of intent, you overlook the Secretary's overall, overarching obligation to assist the veteran in developing the case. They didn't get all of the military records. They didn't get all of the medical records. And as a result, they didn't look at the head injury. This court, excuse me, the Veterans Court should have looked at it through that lens because, one, this was a Q claim filed by a pro se veteran and should have been read more broadly and more sympathetically, and two, they should have looked at it from the point of view of whether or not the evidence was reasonably raised by the evidence of record. The evidence of record is not, in fact, what was in the record in 1967, but what should have been in the record based upon the Secretary's obligation by statute and by regulation to assist the veteran in substantiating a reasonably raised claim from an obvious head injury during service. Let's search for the questions from the panel. Thank you, Mr. Coffman. The case is submitted.